# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Perry Dunning,<br>    Plaintiff, | )<br>)<br>) | |
| v. | ) | 1:16cv444 (LMB/IDD) |
| Superintendent Newton and Sgt. Roney,<br>    Defendants. | )<br>)<br>)<br>) | |

### MEMORANDUM OPINION

Perry Dunning, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that he suffered endangerment during his former confinement at the Riverside Regional Jail ("RRJ"). The matter is before the Court on the Motion for Summary Judgment of Superintendent Newton and Sgt. Roney, the only defendants who were successfully served in the lawsuit.[1] Defendants submitted a memorandum of law with supporting exhibits, and provided plaintiff with the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 53-55] Dunning responded with an opposition captioned as a Motion to Deny Summary Judgment. [Dkt. No. 57] After careful consideration of these submissions, defendants' Motion for Summary Judgment will be granted.[2]

---

[1] Because service has not been effected on named defendants Renoles and Masinburg and more than 90 days have passed since the complaint was filed, they will be dismissed from the action without prejudice pursuant to Fed. R. Civ. P. 4(m).

[2] Defendants also moved for dismissal of the action as a sanction for Dunning's failure to comply with this Court's Order that he provide a more definite statement as to the dates and times of his alleged assaults. [Dkt. No. 49] The Motion to Dismiss will be denied as moot in favor of adjudicating the Motion for Summary Judgment because defendants' entitlement to summary relief is clear and the Fourth Circuit Court of Appeals strongly favors resolution of cases on their merits. See United States v. Shaffer Equip. Co., 11 F.3d 450, 453 (4th Cir. 1993).

## I. Background

In the amended complaint, which is the operative complaint in the lawsuit [Dkt. No. 5], Dunning claims to be a former police officer and alleges that defendants "failed to protect [him] from violence at the hands of other prisoners" at RRJ. Id. at 5. Plaintiff states that Sgt. Givens instructed him to write a statement concerning information he had received about the murder of a child, and "within days" after he gave the statement to RRJ's investigations unit the child's father and other members of the Bloods gang had obtained copies. Dunning alleges that Sgt. Roney "was aware that the Bloods gang had put a hit out on [his] life," and both Roney and Superintendent Newton "took no action" to protect him after he informed them that he had been assaulted and stabbed. Id. at 5-6.

The material facts demonstrated by defendants' exhibits diverge markedly from Dunning's allegations. First, defendants' exhibits establish that Dunning submitted no institutional grievance that made any reference to his having been stabbed until a month after this lawsuit was filed, and even then the grievance concerned only his dissatisfaction with not being seen more promptly by medical personnel; he raised no issues concerning lack of security, being endangered, or not being protected from other inmates. As defendants describe in detail, RRJ has an established grievance procedure which is explained to inmates when they enter RRJ and is included in the Inmate Handbook. Def. Mem. at 3-5; Spratley Decl. ¶3 and Ex. A. Grievance records maintained at RRJ reveal that Dunning availed himself of this process on a number of occasions during 2015 and 2016, albeit in most instances not in compliance with RRJ's procedural requirements. His grievances concerned many topics, including missing items from his laundry bag, the preparation of his food tray, his inmate account, his legal mail, and an offensive comment by a transportation officer. Spratley Decl. ¶¶ 12 - 24. None recounted any

2

incidents of violence directed at him by other inmates.

A month after this lawsuit was filed, Dunning submitted a grievance asking for underwear and socks on May 18, 2016. RRJ's grievance coordinator, Viola Spratley, went to plaintiff's housing unit to discuss the issue of his clothing, and while she was there plaintiff remarked that he had been asking to see medical for treatment because he had been stabbed. Believing that Dunning was referring to something that had just occurred, Spratley asked questions such as where he has been stabbed and whether he was bleeding, and she learned that the alleged stabbing had happened several months earlier and that plaintiff had no wound to show her. Instead, plaintiff was focused on repeating that he was trying to see medical. Spratley Decl. ¶ 25. Because Spratley had no way of knowing whether plaintiff had made previous requests to see medical that had not been honored, she gave him an Inmate Grievance Form to use if he wanted to submit a grievance. Spratley Decl. ¶ 25. Although that grievance, dated 5/18/16, was the first time Dunning had complained of any alleged stabbing, he stated:

> I have put in 9 request in the past 2 mths to see Medical about a stabbing and my medication. I have been told Im to see the Doctor each week but it has not happened. I was stabbed with the blunt part of the spoon in the ribs 2 mths ago and once in the back. Two Medication techs and 2 LPNs and 1 RN are aware and I have not been seen.

Spratley Decl. ¶ 29 and Ex. R. Officer Spratley forwarded Dunning's grievance to the medical department on May 25, 2016, and on May 27 a registered nurse responded:

> Submit another sick call, because you have been seen for spider bite, nothing regarding puncture wounds.

Spratley Decl. ¶ 30 and Ex. R.

In addition to this dearth of evidence in Dunning's grievance history as to his fear of other inmates, inadequate security or protection, or the alleged stabbing incident, his medical history

3

during the relevant time period likewise provides no support for his current claim. On January 18, 2016, Dunning was seen by medical staff at sick call for a complaint of a possible "spider bite" and concerns regarding his prescription for lactulose, a medication for constipation. Flippen Decl. ¶ 3. Dunning submitted two sick call requests in March, 2016, both concerning a spider bite on his arm and his medication. Flippen Decl. ¶¶ 4-5. He was triaged by nurses on April 15 and May 1, 2015, and in both instances he again referenced only a spider bite and concerns about his medication. Flippen Decl. ¶¶ 7-8. He was seen at sick call on May 2, 2016, and the examining nurse noted a spider bite on his left wrist that he said had occurred about six weeks earlier. Flippen Decl. ¶ 9.

On June 7, 2016, about two months after this lawsuit was filed, Dunning for the first time submitted a health services request that mentioned having been stabbed. In its entirety, the request stated:

> For the 11th time this is not about a spider bit. [sic] I was stabbed
> 3 mths back and if Im not seen soon I will contact your main office
> and inform them that you have refused me care.

Flippen Decl. ¶ 10 and Ex. G. When Dunning was seen in the mental health department on June 12, 2016, the psychiatrist noted that he "also reports that he was stabbed with a shank 2x3 months ago." Flippen Decl. ¶ 11 and Ex. I. Nonetheless, when Dunning was seen by the medical doctor two days later, it was noted on his chart only that he took lactulose for chronic constipation deriving from his medications and that otherwise he was doing well. In the subjective portion of the inmate section it stated, "Bruised side from injury three months ago has resolved completely." Flippen Decl. ¶ 12 and Ex. I.

After receiving defendants' Roseboro notice, Dunning filed his Motion to Deny Summary Judgment. [Dkt. No. 57] After citing case law for the proposition that summary judgment is to be

4

denied where there is a genuine issue of material fact, Dunning asserts: "The defendants submitted exhibits to the court, but they did not submit paper work that supports the plaintiff's facts. The defendant has misled this court about the facts and has not been genuine in its documents." He claims that defendants have "left out" 12 unspecified documents, and "several of the documents were put in the trash." Dunning further states without elaboration that defendants "made several attempts to prevent [him] from responding to any of the motions," and he asks the Court to note that defendants have not submitted "any of the 22 request forms that were given regarding the stabbing."

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). An issue of material fact is genuine when "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice."

5

Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

### III. Analysis

Defendants argue that they are entitled to summary judgment on several grounds, all of which are meritorious. The threshold and therefore dispositive consideration is that Dunning failed to exhaust his administrative remedies for his present claim of endangerment. Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). As has been recognized previously in this district, "the PLRA amendment made [it] clear that exhaustion is now mandatory." Langford v. Couch, 50 F.Supp.2d 544, 548 (E.D. Va. 1999). A prisoner now must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy or effective, Porter v. Nussle, 534 U.S. 516, 524 (2002), and even if exhaustion would be futile because it would not provide the relief the inmate seeks. Davis v. Stanford, 382 F.Supp.2d 814, 818 (E.D. Va.), aff'd, 127 Fed. App'x 680 (4th Cir. 2005).

The PLRA requires "proper" exhaustion, which demands "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93. Proper administrative exhaustion requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004). The benefits of proper exhaustion are realized only if the prison grievance system is given a "fair opportunity to consider the grievance" which will not occur "unless the grievant complies with the system's critical procedural rules." Id. at 95; see also

6

Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

When, as here, a Virginia prisoner is confined in a local jail, before bringing an action in federal court he must receive a response to his properly-filed grievance and, if unsatisfactory, he must pursue it through all available levels of appeal before presenting that claim in federal court. In this action, as described above, Dunning clearly was well aware of the grievance process and used it frequently, yet he never properly exhausted his present claim that he was stabbed as the result of defendants' failure to protect him. Therefore, as defendants' undisputed evidence demonstrates that Dunning failed properly to exhaust administrative remedies before filing this lawsuit, they are entitled to summary judgment on that basis. See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674 (4th Cir. 2005) (courts have no discretion to dispense with exhaustion requirement in cases where PLRA applies).[3]

Lastly, the Court notes that even if Dunning had exhausted his claim, he has come forward with no credible evidence to support his contention that he was stabbed at RRJ, while

---

[3]Dunning's attempt to create a genuine issue of material fact as to the administrative exhaustion of his claim in his Motion for Summary Judgment falls short. The Motion is neither notarized nor sworn, and as it thus does not subject Dunning to the penalty of perjury for any misstatements, it cannot defeat defendants' summary judgment request. Fed. R. Civ. P. 56(e); see United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion). Moreover, even if Dunning had signed the Motion under penalty of perjury, the non-moving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This applies even where the non-moving party is a pro se prisoner. Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406 - 07 (D.C. 1994); see also, Local Civil Rule 7(K)(3) (to defeat a dispositive motion, a pro se party "must identify all facts stated by the moving party with which the pro se party disagrees and must set forth the pro se party's version of the facts by offering affidavits ... or by filing sworn statements...."). Dunning's conclusory and unsubstantiated references in his Motion to defendants withholding favorable evidence and misleading the Court are no more than "wholly speculative assertions" and do not suffice to create a genuine issue as to whether his present claim was administratively exhausted. Ross, 759 F.2d at 364.

the defendants' evidence in fact shows that he suffered no physical injury at that facility. As a result, even if Dunning had exhausted his claim, defendants would be entitled to summary judgment on the basis of 42 U.S.C. § 1997e(e), which provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.

See Brooks v. Liptrot, 2013 WL 4498679 *4 (E.D. Va. Aug. 21, 2013) ("Section 1997(e) prohibits inmates from bringing actions for mental or emotional injury suffered while in custody without a prior showing of physical injury."), aff'd, 549 F. App'x 173 (4th Cir. 2013).

### IV. Conclusion

For the foregoing reasons, the Motion for Summary Judgment of defendants Newton and Roney will be granted, and final judgment will be entered in their favor. The claims against defendants Renoles and Masinburg will be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m). Defendants' Motion to Dismiss for Plaintiff's Failure to Comply will be denied as moot. Plaintiff's Motion to Deny Summary Judgment will be denied, and his Motions to Move Forward and to Request Update will be denied as moot. An appropriate Order and Judgment shall issue.

Entered this 10th day of July 2017.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge